# IN THE UNITED DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **KATHERINE WHITE,** individually and on behalf of all others similarly situated, § § § § | |
| Plaintiff, § | **CIVIL ACTION NO.** |
| § | _____ |
| v. § | |
| § | **JURY DEMAND** |
| **THE NIF CORPORATION,** d/b/a **ED'S SEAFOOD SHED,** § § § | |
| Defendant. § | |

## COLLECTIVE ACTION COMPLAINT

Comes Now the Plaintiff, Katherine White, by and through her undersigned counsel, and states the following:

**I.  INTRODUCTION**

1. J. Edwin Bridges (hereafter "Bridges") is the owner of Defendant, The NIF Corporation, d/b/a Ed's Seafood Shed.

2. Bridges controls the day-to-day operations of Defendant related to management issues.

3. Bridges developed and implemented the pay and timekeeping practices of Defendant.

4. Bridges is identified as the incorporator of Defendant on the Alabama Secretary of State's website.

5. Defendant operates as a seafood restaurant.

6. The Plaintiff, Katherine White, resides in Daphne, Baldwin County, Alabama. From approximately March 2007 to April 2014, Plaintiff was employed by Defendant as a server at its Battleship Parkway location.

## II. FACTUAL ALLEGATIONS

7. This action is brought pursuant to the FLSA, 29 U.S.C. §201 *et seq*. and, specifically, the collective action provision of the Act found at §216(b), for equitable and declaratory relief and to remedy violations of the wage provisions of the FLSA by Defendant, which has deprived the named Plaintiff, and all other similarly situated servers employed by Defendant, of their lawful wages.

8. This action is brought to recover unpaid compensation, in the form of unpaid minimum wages and overtime compensation, owed to the Plaintiff and all similarly situated servers employed by Defendant.

9. For up to three years prior to the filing of this Complaint, Defendant has had a uniform policy and practice of failing to pay servers overtime at appropriate overtime rates for hours worked in excess of 40 in a

week.

10. For up to three years prior to the filing of this Complaint, Defendant has had a uniform policy and practice of manipulating servers' time records or payroll records to falsely report and pay hours worked in excess of 40 in a week.

11. For up to three years prior to the filing of this Complaint, Defendant has had a uniform policy and practice of requiring employees to participate in an invalid tip sharing arrangement.

12. As a result, for up to three years prior to the filing of this Complaint, Defendant has had a uniform policy and practice of improperly claiming a tip credit against its minimum wage obligations with regard to its servers.

13. For up to three years prior to the filing of this Complaint, Defendant has had a uniform policy and practice of failing to pay the minimum wage because Defendant took an improper tip credit against its minimum wage obligations for substantial non-tipped hours worked that it required its servers to perform.

14. Defendant's actions were also willful based on the fact that it was investigated by the DOL and the DOL made Defendant aware that the

allegations levied against it were illegal; however, to escape liability, Defendant made misrepresentations to the DOL through its company representatives. The Defendant also required employees to make material misrepresentations to the DOL under threat of termination.

15. At least from the time of the DOL investigation, Defendant was aware that its pay practices were illegal.

## OVERTIME VIOLATIONS

16. Plaintiff and all other similarly situated servers employed by Defendant were not paid overtime at the rate of time and one-half the minimum wage for all hours worked in excess of 40 in a week.

17. Plaintiff and other similarly situated servers were required to clock in and out each day via Defendant's computer system for purposes of tracking each server's revenues/sales for the shift.

18. Plaintiff and other similarly situated servers routinely worked in excess of 40 hours in a week and such hours were captured by Defendant's computer system.

19. Defendant would adjust servers' hours worked for payroll purposes to a number less than 40 to avoid paying overtime compensation.

20. Accordingly, Defendant denied Plaintiff and other similarly

situated servers their lawful overtime compensation.

21. When questioned on why servers do not receive overtime compensation, servers are told they should either: 1) stop complaining, or 2) go find other employment if they want overtime compensation.

22. The U.S. Department of Labor has investigated/audited Defendant's practices with regard to server's overtime compensation. Defendant required servers to misrepresent the number of hours actually worked or face termination.

## INVALID TIP POOL

23. Defendant also required servers to participate in an invalid tip sharing arrangement.

24. Defendant required servers to contribute a portion of their tips to the bus boys/dishwashers. Defendant employs these individuals in the dual role of both bus boy and dishwasher and both duties are performed throughout the individual's shift.

25. Defendant failed to maintain records of the hours these bus boys/dishwashers spent engaged in each role performing non-tipped producing activities (washing dishes) vs. the hours engaged in tip producing activities (bussing tables).

5

26. Defendant's requirement that servers must contribute tips to these bus boys/dishwashers invalidates the tip sharing arrangement and Defendant's right to claim a minimum wage tip credit because, while acting as a dishwasher, these individuals are not employed to engage with customers, do not take customers' orders, do not serve customers or affect the quality of their meal, and they have no expectation of receiving a tip directly from customers.

### SERVERS PERFORMING NON-TIPPED WORK

27. Defendant also violated the minimum wage requirements of the FLSA by taking a tip credit against its minimum wage obligations for substantial non-tipped work it required its servers to perform.

28. If working the "opening" shift, Plaintiff and similarly situated servers were required to report to work at least an hour before Defendant opened the restaurant's doors.

29. Defendant's time clock records evidence this "pre-shift" work; however, Plaintiff and similarly situated serves are not paid $7.25 per hour for this non-tipped work.

30. During this "pre-shift" time before the restaurant's opening, Plaintiff and all similarly situated servers were required to perform

6

non-serving, non-tipped duties, and were compensated at approximately $2.13 per hour for this time.

31. The duties performed by Plaintiff and all similarly situated servers during this time included: kitchen prep work, such as set up the expo line and hot wells, make tea and coffee, cut fruits and vegetables, make sauces and apportion them, make sides and salads, rotate the coolers, etc.

32. After the restaurant opened, but before a server actually has his or her first customers to serve, servers were required to continue performing other non-tip producing job duties for up to 1.5 hours.

33. In the middle of the "opening" shift, Plaintiff and all other similarly situated servers were again required to re-prep for the incoming servers on the next shift performing duties similar to that which were performed prior to the restaurants opening.

34. At the end of the "closing" shift and after the restaurant's closing, Plaintiff and the other servers were required to perform non-tipped duties for up to 1.5 hours, completing the pre opening shift tasks in reverse, storing items, cleaning, etc. After completion of this work, servers began the process of accounting for tips to contribute a portion to the bus boys/dishwashers described above.

35. Plaintiff and other similarly situated employees spent a substantial amount of time – in excess of 20% of their working time during a week – performing these non-tip-producing activities.

36. Defendant failed to maintain records of the hours Plaintiff and the other servers spent engaged in non-tipped producing activities vs. the hours engaged in tip producing activities.

37. Plaintiff and other similarly situated servers are entitled to $7.25 per hour for all the time they were engaged in non-tipped duties, because such time was substantial and not occasional. Defendant should have, at least, paid Plaintiff and all other similarly situated servers the minimum cash wage of $7.25 for the pre- and or post-shift time, as it occurred at regularly recurring times designated by Defendant.

38. Defendant improperly claimed the FLSA tip credit (29 U.S.C. §203(m)) for time spent performing this non tip-producing work.

39. Time spent on these non-tip producing activities was not occasional, incidental, or insignificant; it was substantial and regular.

40. J. Edwin Bridges developed, administered, and enforced the compensation practices described above and throughout the Complaint in order to avoid incurring costs associated with employing back of the house

employees such as dish washers at market hourly rates, to avoid paying minimum wages to servers, to avoid paying minimum wages for non-tipped work, and to avoid paying one and half times the minimum wage for overtime work.

41.     Plaintiff and all other similarly situated servers were subject to Defendant's illegal pay practices, and are similarly situated for purposes of their job duties.

42.     Plaintiff and all similarly situated servers who elect to participate in this action seek misappropriated unpaid minimum wages and overtime compensation, an equal amount of liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. §216(b).

### III.   JURISDICTION AND VENUE

43.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331.  Venue is proper in the Southern District of Alabama, pursuant to 28 U.S.C. §1391(b).

44.     Defendant is subject to personal jurisdiction in the State of Alabama for the purpose of this lawsuit.

### IV.   FLSA COLLECTIVE ACTION ALLEGATIONS

45.     At all times material to this action, Defendant has been an

9

enterprise engaged in commerce or in the production of goods for commerce as defined by §203(s)(1) of the FLSA.

46. Defendant is an interstate company whose employees are engaged in interstate commerce and whose employees handle and/or work on goods that have been moved in and/or produced in commerce.

47. Defendant's annual gross volume of business exceeds $500,000.00.

48. At all times relevant to this action, Defendant is or has been an "employer" of Plaintiff as defined by §203(d) of the FLSA.

49. At all times material to this action, Plaintiff and all others similarly situated servers were "employees" of Defendant, as defined by §203(e)(1) of the FLSA. They also worked for Defendant within the territory of the United States within three years preceding the filing of this lawsuit.

50. The provisions set forth in §207 of the FLSA apply to Defendant, and the Plaintiff and all similarly situated servers were covered by §207 of the FLSA during their employment with Defendants.

51. Plaintiff and all similarly situated servers employed by Defendant were individually engaged in interstate commerce and/or the production of goods for interstate commerce while working for Defendant.

10

Their interstate commerce activity included, but was not limited to, serving customers who were traveling in interstate commerce, serving food that originated out of state of flowed through interstate commerce, and processing credit card transactions that crossed state lines.

52. Defendant has intentionally failed and/or refused to pay Plaintiff and all other similarly situated servers according to the provisions of the FLSA.

53. Defendant's systems and practices relating to its invalid tip pooling/sharing arrangement, non-payment of minimum wages, and improper payment of overtime to Plaintiff and all similarly situated servers, all violate the requirements of the FLSA.

54. Defendant has been aware of the requirements of the FLSA and its corresponding regulations and their own violations of the FLSA since at least May 2012. Despite this knowledge, Defendant has failed to pay the Plaintiff and similarly situated servers the amount of pay required by the FLSA.

55. There are numerous similarly situated servers who have been improperly compensated in violation of the FLSA who would benefit from the issuance of Court Supervised Notice of the present lawsuit and the

opportunity to join the present lawsuit.

56. These similarly situated employees are known to Defendant and are readily identifiable and can be located through Defendant's records – specifically, all servers who have been employed by Defendant and have not been properly compensated would benefit from Court Supervised Notice and the opportunity to join the present lawsuit and should be so notified.

57. In addition to the amount of unpaid wages and benefits owed to the Plaintiff and all other similarly situated Servers, they are also entitled to recover an additional equal amount as liquidated damages, pursuant to 29 U.S.C. §216(b), and pre-judgment interest.

58. Defendant's actions in failing to properly compensate Plaintiff and all other similarly situated servers were willful.

59. Defendant has not made a good faith effort to comply with the FLSA.

60. Plaintiff and those similarly situated are also entitled to an award of attorney's fees and costs pursuant to 29 U.S.C. §216(b).

## V.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated servers, pursuant to §216(b) of the FLSA, prays for the

following relief:

    A.    At the earliest possible time, that she be allowed to give notice, or that the Court issue such Notice, to all servers who have been employed by Defendant in the last three years;

    B.    An order awarding damages in the amount of their respective unpaid compensation, plus an equal amount of liquidated damages pursuant to 29 U.S.C. §216(b), and/or prejudgment interest;

    C.    An order pursuant to the Declaratory Judgment Act finding Defendant's practices illegal and in violation of the FLSA;

    D.    An order awarding reasonable attorneys' fees, including the costs and expenses of this action;

    E.    Such other legal and equitable relief including, but not limited to, any declaratory relief to which they may be entitled;

    F.    Plaintiff further demands a jury to try the issues when joined.

## Vi.  JURY DEMAND

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Dated: June 23, 2015                Respectfully submitted,

*s/ Robert J. Camp*
**ROBERT J. CAMP**
rcamp@wigginschilds.com
**WIGGINS, CHILDS, PANTAZIS, FISHER & GOLDFARB, LLC**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500

*s/ Robert C. Epperson*
**ROBERT C. EPPERSON**
repperson@rcelaw.com
P. O. Box 477
Foley, AL   36536
(251) 943-8870

*Counsel for Plaintiff*

14